Diana Torres O'Melveny and Meyers for Appellant Bosley Medical I'd like to reserve five minutes for rebuttal. Sure. There are four reasons for reversing the District Court's ruling that I would like to address this morning. First, the District Court improperly granted summary judgment on Bosley Medical's anti-cybersquatting claim, even though no party had asked for summary judgment on that issue. They asked for summary judgment on whether something was commercial or not, didn't they? Yes, Your Honor. And their argument is that if it's found to be not commercial, that's the end of the ballgame on cybersquatting. That is their argument, Your Honor. What's wrong with that? Commercial use is an element of the infringement part of the Lanham Act, and it is an element of the dilution aspect of the Lanham Act, but it is not an element of the ACPA. The ACPA requires a bad faith intent to profit, but it does not require commercial use. Second, the District Court wrongly determined that Kramer had not engaged in any commercial use of Bosley Medical's mark, and it did so by ignoring key facts, such as the big banner advertisement for public citizen and the links to sites where competitors to Bosley advertised, and then incorrectly applying the law. Third, the District Court wrongly decided that there was no likelihood of confusion, and it did so by ignoring the well-established doctrine of initial interest confusion. Initial interest confusion is the law of this circuit, and it applies here. Finally. Is that your position, I guess, has to be that simply by virtue of the fact that if somebody entered Bosley Medical into a search string, that it would find the researcher would find themselves at this site, and that's the violation, because as I understand it, there's a clear disclaimer on his site that says, I'm not affiliated with the company. Is that correct? No, Your Honor, and it's wrong for two reasons. One, with respect to the search string, if you're talking about search string within the search bar on Yahoo or Google, no, that's not what we're talking about. We're talking about when you go to www, you go to the URL bar and you type in www.BosleyMedical.com. You go to Mr. Kramer's site. Okay, and my question is, is that sufficient in your view for a violation, even though as soon as the search engine takes you to that site, that there is a disclaimer that's printed on Mr. Kramer's site that says, I'm not the company? Not necessarily. But in this case, it is because, A, for two years, there was no disclaimer on Mr. Kramer's site. That disclaimer did not get put up there until sometime before the summary judgment motion was filed. But it was not there for the first two years of the litigation. Second, the use of BosleyMedical.com or the use of any trademark.com may be a violation of the ACPA in certain circumstances and may be infringement in certain circumstances. It is not always, but it is here. And it is here. So you're not urging us to hold broadly that the mere use of the search phrase www.BosleyMedical.com is a violation? We are asking the Court in this circumstance to hold that Kramer's registration of BosleyMedical.com is a violation of the ACPA and is both trademark infringement and dilution. We are not asking the Court to make the broader ruling that any use of www.trademark.com in any circumstance would be an infringement, dilution, or an ACPA. Well, why is it improper here? It's improper here for a number of reasons. First, with respect to the ACPA, the Court granted summary judgment, although nobody asked for summary judgment on that issue, as I said, because the Court read into the statute a commercial use requirement. It's not there. The statute requires only the registration of an identical or confusingly similar mark. Doesn't 15 U.S.C.A. 1125, what is it, C, 4B, say the following, shall not be actionable under this section, section meaning 1125, noncommercial use of a mark? In this case, 1125C, the defenses in 1125C have never been held to apply to any of the other parts of 1125. 1125A and B were written in 1946. 1125C was written in 1996. And 1125D was written in 1999. You think Congress made a mistake when they said the following shall not be actionable under this section? Yes, Your Honor. In one of the cases that Mr. ---- Well, who's got to fix that, them or us? Well, we certainly can, we or you can certainly interpret it consistent with the context in which the statute is written and in which the language makes sense. And one of the cases that Mr. Kramer submitted to the Court last week, it's a Supreme Court case, and it deals with that issue, and it expressly says you have to look at context because a busy Congress is easily capable of a Scrivener's error. And in this case, Your Honor, the exceptions to 1125C have never been held by any court to apply to any other parts of 1125. You're asking us to say the clear language of this statute just can't mean what they meant, what they said. I mean ---- The statute is the dilution statute, and it was codified at 1125. Well, it's all in 1125. Here's 1125. It's A, B, C, D, and then it says the following shall not be actionable under this section, a noncommercial use of a mark. Correct. Correct. And 1125C, those ---- It doesn't say that. No, it doesn't. And that was the same issue in the Supreme Court case that Mr. ---- that Mr. Kramer submitted to this Court. There was the use of the word clause or paragraph, and it was held that the only way it made sense and the way that ---- the way it made most logical sense was to apply the ---- was to assume that Congress had made an error. But in this case, it's actually ---- it's actually more basic than that. The ACPA has very expressed terms, and so does 1125A and 1125C. 1125A specifically requires commercial use. 1125C specifically requires commercial use. What do we do ---- Counsel, what ---- I have the same problem Judge Silverman has. What do we do with the principle of statutory interpretation that says if the statute is not ambiguous, and I submit to you that that provision of the statute is not ambiguous, that ends the Court's inquiry. You're asking us, I think, as I hear your argument, to look somehow at the legislative history, to maybe look at other sources outside the statute, so that we agree with you that Congress must have committed an error in enacting this particular provision of the statute. But can we do that under canons of statutory interpretation? You can under the Court's ---- the Supreme Court's most recent interpretation. But not only that, I'm not asking you to ignore the plain meaning of ----- No, Your Honor. I don't believe ---- I believe that the ACPA is very clear in not requiring commercial use. The ACPA, 1125A requires commercial use. 1125C requires commercial use. 1125D expressly does not. It requires the registration of a mark, and it requires a bad faith intent to profit. And one of the factors for bad faith is commercial use. There would be no point in having a commercial use factor in bad faith if commercial use were required from the get-go. Well, how do we protect legitimate First Amendment criticism, which is what Mr. Kremmer says he was engaged in here at Bosley Medical? With respect to the ACPA, the registration of bosleymedical.com, the act of registering it is not legitimate First Amendment expression. There is nothing expressive in the mark. There is no commentary in the mark. There is no criticism in the mark. What the ACPA is geared towards is the act of registration and the intent behind the registration. It is not geared towards the commercial use. And, in fact, to violate the ACPA, you don't need to use the mark at all. You have to find an intent to profit, right? You have to find it. Yes, you have to find it. What evidence was there that was a bad faith intent to profit? Well, Your Honor, we believe we have substantial evidence of it, but because we did not ask for summary judgment on that issue, and Mr. Kremmer did not ask for summary judgment on that issue, it's not before the Court. I can go through with you what I believe the evidence of bad faith intent would be, but it's not before the Court. Let me ask you to talk about whether there was commercial use of the mark. This guy has got a website entitled bosleymedical.com where he's talking about Bosley Medical. Why isn't that permitted? He can have a website where he talks about Bosley Medical. Called bosleymedical.com. It's descriptive of the subject of his website. It is not. It is not. He did not register www.thisisaboutbosleymedical.com. He did not register www.myviewsonbosleymedical.com. You don't have to say www.thisiswhatitsabout, fill in the blank. I mean, it's www.bosleymedical. You know it's about Bosley Medical. It's understood it's about Bosley Medical. Well, as this circuit and a number of other courts have held, www.distinctivetrademark.com is assumed by people to be the website of the trademark owner. It is not assumed by people to be something that is simply about the trademark owner. We have a case that says if you say www.apple.com, it could be about apples, it could be about Apple computer, it could be about growing apples, it could be. Yes, there most certainly is a case that says that. It also says that www.drseuss.com cannot, you know, can't be just about anything. Apple is a word, a common word in the English language. This website is about, I mean, the subject matter of the website is Bosley Medical. Yes, it is. Okay, why can't this guy have a site called www.bosleymedical that concerns Bosley Medical? Because that would be, that is essentially his argument that this is a nominative use of the mark and that's all that it is. But a nominative use cannot be a use that falsely implies association or affiliation with the mark holder. But your argument logically then has to be that no one could ever use the name of the company without some sort of additional descriptor as part of the address that says I hate bosleymedical.com or, you know, fill in whatever language you want. And I don't know that the law goes quite that far, does it? No, it doesn't go quite that far because there are certain circumstances such as in the Nissan case where more than one people have the right to use that mark. In this case, there was only one person, one entity that has the right to use the Bosley Medical mark. If Tom Bosley wanted to register bosley.com, he might have a decent defense. But Mr. Kramer didn't have any rights to use Bosley Medical. Even if the whole purpose was so that he could put out on the Internet his criticism of Bosley Medical and what the company had done to him when he went in for hair restoration? If he wanted a site to do that, and he has one, and it's called bosleymedicalviolations.com, if he wanted a site to do that and he wanted to accurately describe that site using his domain name, he could have done just what he did, which is bosleymedicalviolations or bosleymedicalsucks or idontlikebosleymedical.com. But he chose to use Bosley Medical alone as his domain name because people go to www.nameofthecompany.com to find that company's website. Counsel, we're all familiar with putting in that kind of a search request and not ending up at the place that we thought we were looking for. I mean, doesn't the researcher assume the risk, if you will, that by using that simple a search term that it isn't necessarily going to get me where I want to go? Your Honor, the ACPA, at any rate, is not aimed at protecting the researchers. It's aimed at protecting the ability of the Internet to function as cyberspace, commerce, commerce in cyberspace. But the problem I have with your argument is that you really are asking us to say that Bosley Medical, because of the fact that Kremer doesn't have Bosley in his name, is the only entity in the world that can use the address www.bosleymedical.com, that by the mere fact that it is claiming registration of that trademark, that it prevents anybody from using that phrase on the Internet. And I don't know that our law goes that far. In terms of the development of the Internet and protection of First Amendment rights, I'm not sure we want to go that far. Your Honor, there are two parts to your question that I see. One is whether or not we're asking you to say that nobody other than Bosley Medical has the right to use www.bosleymedical.com. And the answer to that is yes, because there is no other company or entity or person that has the trademark rights to Bosley Medical. But the second part of your question went to whether or not we would be asking the Court to preclude anyone from using the phrase or the term Bosley Medical in a domain name, within a domain name, or on the Internet. And we're not. Didn't you exactly ask that thing at the district court? Didn't you seek to enjoin any use of Bosley Medical on his website? Your Honor, we did at the inception. We settled libel claims. We included it, frankly, incorrectly, as part of the prayer for relief. But Mr. Kramer knew very well. Was there an error on the part of the drafter of the complaint? It may have been, Your Honor. But Mr. Kramer knew very well that we were not concerned with the content of his website. We had given up, expressly given up the right to complain about the content of his website. You mentioned you wanted to reserve some time. Yes, Your Honor. I guess I am up. I do believe that the district court's finding, the district court incorrectly ignored the initial interest confusion doctrine of this Court. It ignored Sleecraft, frankly, in favor of Taubman. It adopted the Sixth Circuit's opinion in Taubman, but did so on a commercial use analysis that, frankly, doesn't comport with Taubman, because even Taubman says that when you put links to another site, you become commercial, even if those links are minimal. Thank you. I'd like to reserve the rest of my time. Thank you. May it please the Court. I am Paul Allen Levy, appearing on behalf of the appellee, Michael Kramer. Michael Kramer had an unhappy experience as a customer of Bosley, and so he established a website to warrant consumers against sharing his experience, and decided that the Bosley medical.com. And in doing this, he stepped into a hot controversy in the law about the interplay between trademarks and domain names. We note Bosley's acknowledgment in oral argument in its reply brief that it doesn't appeal the judgment insofar as it dismisses the claims against bosleymedicalviolations.com or its claims against the use of Bosley on its website. And those aspects of the judgment should certainly be affirmed. And so the sole issue before the Court this morning is whether Kramer can use bosleymedical.com for a website about Bosley. There are two reasons why the district court's judgment should be affirmed. The first is that Kramer's use of the domain name is completely noncommercial. Trademark law states a noncommercial tort. We move to dismiss all of the trademark claims in this case, including the ACPA claim, and explain to the district court the same language in the statute that we've set forth in our briefs here, why the statute doesn't apply to noncommercial uses. In response, Bosley did not make the argument that it makes in this Court about how the ACPA does not require commercial use. Instead, it admitted the existence of the commercial use requirement repeatedly in its papers. And I can direct the Court in our record excerpt to pages 16, 206, 207, 208, 212, and 215. So to the extent that Bosley now argues against the commercial use requirement, our first submission is that it hasn't preserved the argument for appeal. Now, the brief also suggests that Bosley didn't have discovery on the issue of commercial use. That is not true. In the district court, and I point the Court to page 16 of our record excerpt, Bosley argued for three interrogatories, eight document requests, and nine deposition topics on the grounds relevant to commercial use under the trademark laws. And I can read to the Court from its brief, which is at page 16, establishing whether Kremer receives any commercial or financial benefit from these websites goes to whether Kremer uses the marks in commerce, and thus whether Kremer's use of the domain names and websites are actionable under the Lanham Act. Kremer answered all of these written discovery requests. He was willing to answer any questions on the nine deposition topics at his deposition. Indeed, he did not refuse to answer any deposition questions. Our motion to dismiss and for summary judgment was expressly directed, as I said, to all Federal claims. I would direct the Court's attention to pages 15, 29, and 30 of our motion, a memorandum in support of the motion to dismiss and for summary judgment. And the motion itself expressly says all claims we seek to have dismissed for grounds for no use in commerce and no commercial use. Now, the proper procedure for Bosley to follow if it wanted discovery was to file an affidavit under Rule 56a. But instead of filing an affidavit under Rule 56a, it cross-moved for summary judgment. Now, Bosley puts forth three grounds for finding Kremer's use of its domain, of its trademark in the domain name commercial. None of them are sound. The first ground, which was emphasized in the district court, not so much in this court, is the adverse impact on Bosley's business. There are some cases that said this. They're distinguishable. They're wrong. We think this Court rejected that mode of analysis in Nissan. And because Bosley doesn't emphasize the argument in this Court, presumably because Nissan came down between the district court decision and this appeal, I won't address it further unless the Court has any questions. Second ground is the links to commercial third-party sites. The most important fact about those links is that they are not ads. They produce no revenue for Kremer. And therefore, they do not make his websites commercial. Now, the third-party sites were commercial to some extent. And they, therefore, couldn't use Bosley's trademark as a search term for those sites. But merely referring to those sites doesn't make Kremer's site commercial. This is not like the Planned Parenthood case, for example, which makes the commercial links argument where the purpose of the website was to sell merchandise, a book. Or the Purdy case where merchandise, the availability of anti-abortion merchandise was prominently featured on the website. And in the Taubman case, to which my co-counsel refers, the link was to Mishkoff's own business and to his girlfriend's shirt business. There was something on the site that said at one point, you don't have to go to the mall. You can get my girlfriend's shirts. So there's a financial benefit to Mishkoff in that case. No, go right ahead. I'm wondering if you're arguing for a special rule that covers the Internet. Let me put it in context. Suppose Kramer decides to go rent an office in a medical building in Beverly Hills and puts a sign on the door that says Bosley Medical. And you open the door, and in there's just a whole bunch of literature that could he could he do that? One would wonder what the store sign implies, I suppose. And why doesn't the store sign imply the same thing that the domain name does? Well, as your questions indicated, there are many, many domain names which indicate subject and not source. So a sign on a business office does tend to indicate, you know, this is, you know, if it says Bosley Medical, it tends to suggest this is Bosley Medical's office. But in the domain name context, there's www.apples.com. And, of course, a host of cases that have been decided in gripe site cases like this one, in which domain names in the form www.trademark.com have been upheld even though they were for gripe site. So I think there's an English, the apple situation, because apple is a regular English word with its own generic meaning. But Bosley Medical is not. But if a domain, if essentially Apple example shows is that domain names indicate subject, now they may also indicate source in some context. But since the domain name can indicate subject in that context, there's no reason why a domain name that has a trademark in it or that is the trademark cannot also indicate subject. In Brookfield Communications, for example, you have two companies who are fighting about who has the right to use a particular trademark to denominate its product. And so West Coast communicates, West Coast puts up a website about its product. It uses movie buff as a domain name to denote its product. And it's implicitly representing itself as the source of the product that has movie buff as its name. And the Court decides that, no, it's Brookfield Communications and not West Coast Entertainment that has the right to use that term to denote its product. But when, but there are lots of other cases in which source has nothing to do with the domain name. And this we submit, and the Grifesite cases are among them. I'm not sure if I've answered your question. Q What do we do with the fact that Mr. Kramer has this odd interaction with Bosley Medical before he goes live on the site? I mean, that comes awfully close to looking like he's trying to extort money out of  There are two alleged, there's one, the alleged letter to the doctor which he thinks As I understand it has never actually been, Mr. Kramer denies that he That's right, he misspelled his name and so forth. The letter I think But you don't deny that he showed up at their offices saying here's what I'm going to do and He announces a plan to criticize them, to criticize them in a variety of ways, one of which includes the internet, doesn't ask for money, and doesn't mention the domain name. So how could it be a shakedown to sell the domain name if it doesn't even mention the domain name? Indeed, if you look on page 9 of Bosley's opening brief, they say that attached to that letter and the complaint, the amended complaint alleges that there was a package with the letter. Bosley's opening brief puts some meat on that and says that attached to the letter was a So that's consistent I think with Kramer's explanation that what he was trying to do was let Bosley know what he had, what information he had, get up into a discussion of the content of the site. He got sued for libel down the road. But isn't this after he had sued the doctor in Seattle who did the procedure? Right. And that litigation was over. He lost that case or couldn't get anybody to represent him. And then he shows up at their offices with what he calls a quote-unquote settlement letter. I mean, if we were to send this back to the trial court and say summary judgment was improvidently granted here, couldn't a reasonable fact finder infer that Mr. Kramer is smart enough to know that there are extortion laws on the books and that you can't just march in and tell Bosley Medical either pay me $400,000 or I'm going live on my website and that that's really what this was all about? I don't want to be misunderstood when I refer to a settlement letter. There was a letter from the district attorney to Bosley that is now attached to his website, which is basically the gist of the charges against Bosley. So you're saying the settlement had to do with the resolution of the L.A. County investigation. That is correct, because they say it's what's now on his website. It wasn't that he was trying to obtain some kind of monetary settlement. Absolutely not. There was no suggestion in the record that there was any reference or implicit reference to the money. Now, it is true. These gripe site cases will always come up in the context of somebody who's been unhappy with the business. And it may well come up in the context of somebody who's been in a dispute about whether the business owes him money. But if the mere fact that there's been an interaction without any suggestion of, hey, I've got this domain name and, well, maybe you should make me an offer, which is what the court of appeals in the Petah case said was sufficient as an extortionate demand. There's nothing like that here. If the mere fact of an interaction is enough to get them to trial, there's going to be an enormous chilling effect on people's right to dissent on the Internet. Well, except that what's odd about this one is that he actually showed up at the offices. I mean, it would be one thing if he just went live with his website and all the things he wanted to say about Bosley. But the fact that he shows up before he goes live with the website. But what he doesn't show up with is the domain name. What he shows up with is the substance. Let's remember, he was sued for libel. And then we had, you know, the discussion about what ought to be on the website in terms of the content. It would have been nice to have had that discussion before the litigation instead of afterwards. And if you say that somebody is engaged in an extortionate plot for a domain name simply because they put the substance of their complaints before the individual and say let's talk about them, again, it seems to me there's a practical chilling effect that we ought to avoid. Now, with respect to the webpage and the hyperlink and so forth, the webpage itself is not at all confusing. It appears as it appeared at the time of the amended complaint at page 122 of Bosley's record excerpt. I take it that you don't disagree with the statement of facts by Ms. Torres that that disclaimer didn't occur or was not posted until quite late in the litigation. The disclaimer and hyperlink, according to Kremer's affidavit, his, I believe his fourth affidavit, which appears at page 144 of Bosley's record excerpt, says that as of the time of that affidavit, he hadn't made any changes since the amended complaint had been filed. Now, the ‑‑ That doesn't really answer my question. No, no, I understand. She said two years. Yeah, yeah. Do you disagree with that? No, I don't disagree. It was there at the time the amended complaint was filed. But even before that, you have a legend at the top that says the Bosley Medical Institute sued by Attorney General for false advertising. That was on there from the beginning. But that's not a disclaimer of the website owner that this is not a company‑sponsored site. I mean, it would be an odd thing for a company to put as the first thing on its website. Right. Not only that, that's there. There's a reference to the UDRP proceeding to ‑‑ in which Bosley sought to take the domain, to suppress the website, to take the domain name away. What does the disclaimer say now? The current disclaimer? This website contains information critical of the Bosley Medical Institute and is not affiliated with it in any way. Okay. All right. But it is certainly true that anybody ‑‑ and then, of course, you have the lawsuit banner that they complained contains a link to Bosleymedicalviolations.com, which in turn links to Public Citizen, which says that Bosley has sued to take this website down. Now, nobody who comes to that website is possibly going to think that they've got the Bosley's own website. And so the real question in the case is, what is a fair way, what means are permissible for website operators to communicate truthful information about the content of websites? To tell Internet users that Kremer has a website with information in which they may be interested. Are domain names a fair way to do this? Are they like the title of a book or like the title or subject card in a library card catalog? Are domain names a way for web operators to communicate the content of their websites and not just their own identity as authors? And we think that this is a permissible purpose for a domain name. Finally, the court should not assume that Internet users are easily distracted, easily fooled by domain names that don't get them where they want it to go. Many early cases articulated that concern. Consumer might be looking for a company. If they find a different website, they won't persist. But more recent cases, cases from this Court and elsewhere, take a more enlightened view. If users type in a name and don't get to the website they're looking for, they'll guess again or they'll use a search engine. This Court said that in the Interstellar Starship opinion. The Court said it again in the Nissan opinion. And so as long as the webpage is clear about what it is, the mere use of a trademark and a domain name by somebody with a legitimate interest in that name. And it is not just a trademark owner who has a legitimate interest in using a trademark. It's also people who want to speak about the trademark holder who have a legitimate interest in using the trademark to identify the subject of their criticism. You mentioned the Interstellar Starship case. Doesn't that case say that sometimes the domain name can be deceptive and sometimes not? It sort of depends. Why isn't this one of those cases where it is since Bosley Medical isn't a generic term? Because Bosley Medical is the subject of the website. And you can use a trademark to denominate what you're speaking of. If you were to write a book about Bosley Medical, you could say Bosley Medical. And it would. That's what it would say on the cover. Could I write. Wouldn't that. So I have a website called Dr. Seuss that happens to be about Dr. Seuss under under Interstellar. I thought that was the message of Interstellar that if you if if it's so if it's if it's so distinctive to where it's unique, everybody would assume that Dr. Seuss is owned by Dr. Seuss. But Interstellar Starship comes up in the not in the criticism context. It comes up in the context of two different companies which are fighting over who has the right to use the mark as its domain name to identify itself. After all, the defendant in that case was using. Well, true, true to Interstellar Starship. I have a website called Dr. Seuss dot com. That's critical of Dr. Seuss. The message is Dr. Seuss is bad for kids or whatever. Could I could I do that under Interstellar Starship? I think in a gripe site, a non-commercial gripe site context that the first that not only would the trademark laws not be offended, but it might indeed offend the First Amendment to prevent the use, the truthful use of Dr. Seuss as the domain name to indicate a website that criticizes the Dr. Seuss books. Finally, a brief word on the slap ruling. Bosley states it cites a statement from our fee application that when the case was first brought, many cases seem to support Bosley's argument. That was not true, however, at the time the amended complaint was filed, which was the first time the state law trademark claims, which are the subject of the current slap motion, was brought. In the fall of 2003, the Taubman case had already come down, and many of the cases on which we rely had already come down. And beyond that, the slap statute is not limited to frivolous claims. Any claim found legally wanting based on the evidence presented in the case at the early stage of the case is subject to being stricken as a slap. Moreover, the fact that Bosley isn't appealing the dismissal of the claims against Bosley Medical Violations dot com and the claim that the use of Bosley's name on the website itself infringed and diluted its trademark doesn't make those claims any less of a slap. There's a we had another case on this calendar that went away. And the parties gave us a 28 letter citing to a recent California statute and a court of appeal case that essentially say that the anti-slap statute does not apply in commercial context. I'm blindsiding you with that one. But assuming assuming that my characterization is correct, would that take anti-slap out of this case? Because the court of appeal opinion says that the statute applies to cases already in the pipeline. Without saying that, Mr. Albert was nice enough to mention as we were waiting that there were I take it this is the case that was submitted on the briefs that you're referring to. I think it was withdrawn because counsel had a conflict, so I think it went away entirely. In any event, this is a noncommercial use. This is a lawsuit. It cites the trademark laws, but it's a lawsuit against the noncommercial use of a trademark to talk about the trademark holder. And so although I hesitate to comment on a case without having read it, and I'd be happy to look at the look at their 28 J letter and try to respond to the court by letter if the court thinks that's appropriate. We might need it. I assume if we need further briefing, we'll let you know. Thank you, Your Honor. Thank you. Thank you. Ms. Torres, you get the last word. Thank you, Your Honor. A couple of points. If Kramer wanted to criticize Bosley Medical in a purely noncommercial way, he could have done so by not including links on his website. But every case that has considered the issue of commercial versus noncommercial use has said that where there are links to other sites, it becomes commercial. His link is to his lawyer, right? Links to his lawyer. It links to his other website, which then links to commercial sites. You can't get around. Well, where do we draw the line with that argument? I mean, you know, once removed, twice removed. Your Honor. It seems to me we're down a slippery slope if we follow you there. You don't have to go down a slippery slope. He linked to his own site, which then linked to another site. If you say that that is not linking directly, then what you're doing is you're allowing him to circumvent the commercial use. So then I guess my question is where do we draw the line? One link? Two links? Three links? You can draw the line at one link if you want, because he linked to Public Citizen, which is an entity in and of itself that has interest in these issues. It intervened in Nissan on its own behalf, and it solicits donations. The Purdy Court found that that was enough. The Jews for Jesus Court found that that was enough. The Taubman Court found that the link to his girlfriend's site was enough. Doesn't have to profit himself. Are you arguing an implication that by linking to his free lawyer's site that he's impliedly trying to pay them back for the free service by giving them some coverage? He may have been. He may not have been. We weren't given discovery on that, so we don't know. But it doesn't matter. He doesn't have to pay them back. He doesn't have to benefit from it at all for his site to be commercial. It's like the jurors – it's like personal jurisdiction. If you purposefully avail yourself of the benefits of the forum, you have to – you subject yourselves to the downside as well. If he purposefully availed himself of the benefit of the links, whatever those may have been to him, he has to accept the consequences of that as well. Every court has held that links to commercial sites make the site itself outside the realm of purely noncommercial. You know, it just seems to me there are links and there are links. I mean, this link says, you know, basically, if you want to contact my lawyer, here's their name and address. That's a little different than if it linked to his own shampoo, you know, or some other hair product site or other doctor or something of that sort. Actually, it didn't. It's just basically the way to get a hold of his lawyer. No, Your Honor. Actually, it linked to Public Citizen, the organization, and it had a big banner advertisement for it. I mean, isn't Public Citizen the lawyer? They have two arms. They have a public interest advocacy arm and they have the litigation group arm. This linked to the public interest advocacy arm, and it doesn't matter. They solicit donations on their site, and that makes it commercial. If he were represented by Morrison and Forrester and he said, if you want to get a hold of my lawyer, click on here, would that make it commercial? No. If Morrison and Forrester were soliciting or were using... To profit-making business, I mean... Then it might, Your Honor, but the situation... Even if they were providing pro bono legal assistance to him, would you say that that would be improper? Linking to Morrison and Forrester? Yeah. If Morrison and Forrester solicited donations through their website, it would... They don't solicit donations. They solicit money. I would say yes, but Morrison and Forrester doesn't... This is a little different. Morrison and Forrester, to my knowledge, doesn't have a separate arm that is in the business of advocacy. The whole business is advocacy. I was going to say. Every single lawyer... Non-legal advocacy. You're saying that anytime anybody links to anybody who is gainfully employed, it would be a commercial site. No, Your Honor, not to anyone who is gainfully employed, but to any website through which you can buy something or you can give money. What about with the ACLU? What about the ACLU? Your position would be the same, right? Because they solicit money from the public? Absolutely. If they were providing pro bono legal services to Mr. Kremmer because of their interest in advancing First Amendment rights, that would be a commercial use? Absolutely. The Purdy Court found that. The Jews for Jesus Court found that. Every court has found that. The cases where they found no commercial use have explicitly found no commercial use because there were no links. No one forced him to put a link on his site. No one forced him to put a banner advertisement. Okay. Thank you very much. Mr. Levy, thank you as well. The case to start is submitted. All right. Every other case on the calendar is submitted. So we'll stand at recess. Thank you. All rise. This Court for discussion stands adjourned.
judges: T.G. Nelson, Silverman,tallman